IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-00372-01-CR-W-DW |
| ) | |
| LEONARD A. MULKEY, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on Defendant's Motion to Dismiss (doc #21). In the alternative, defendant moves to exclude from evidence all testimony and exhibits regarding the evidence in this case which has been destroyed. For the reasons set forth below, it is recommended that the motion be denied.

I. BACKGROUND

On December 2, 2009, the Grand Jury returned a three-count indictment against Leonard A. Mulkey. Count One of the indictment charges that from October 25, 2007 to December 11, 2007, defendant Mulkey conspired with other persons to distribute five grams or more of cocaine base "crack." Count Two charges that on November 6, 2007, defendant Mulkey knowingly possessed with intent to distribute five grams or more of cocaine base "crack." Count Three charges that on December 11, 2007, defendant Mulkey knowingly possessed with intent to distribute five grams or more of cocaine base "crack."

Defendant set forth the background of the case as follows:

> The reports provided by the government suggest that on October 25, 2007 a confidential informant purchased cocaine base from a black male at an address on

Chestnut in Kansas City, Missouri.  As a result of that purchase, officers obtained a search warrant for the residence.  The search was executed on November 6, 2007.  Purported drugs, drug paraphernalia, and money [were] seized during the search.  On December 11, 2007 patrol officers observed a car with license plates that did not respond back to that type of vehicle.  Reports indicate that the officers attempted a car stop, but that the driver fled on foot.  The driver was caught and identified as Mr. Mulkey.  Officers report that during the brief foot chase, they observed Mr. Mulkey throwing items.  Officers recovered money and purported drugs form the area where Mr. Mulkey had allegedly fled.

The indictment in this case was returned on December 2, 2009.  Mr. Mulkey was not arrested on the indictment until 2012.  The government has informed counsel that the drug evidence in this case has been destroyed.  Counsel has been provided with lab reports prepared in 2007 which indicate that cocaine salt (powder cocaine), cocaine base (crack cocaine) and marijuana were recovered during the incidents summarized above.

(Defendant's Motion to Dismiss (doc #21) at 1-2)

The government provided the following additional background:

In our case, following seizure … of the evidence in dispute, field testing returned presumptive positive indications for the presence of cocaine, the defendant made admissions that the seized evidence was cocaine, and subsequent laboratory testing confirmed that the seized substances were in fact cocaine prior to its erroneous destruction in November 2012.

(Government's Response to Defendant's Motion to Dismiss (doc #24) at 3)

An evidentiary hearing on defendant's motion was held on February 13, 2013.  Defendant Mulkey was represented by Assistant Federal Public Defender Laine Cardarella.  The Government was represented by Special Assistant United States Attorney Daniel D. Royce.  Defendant called Rick Curtin, a civilian employee of the Kansas City, Missouri Police Department, and Sergeant Renee Reyes of the Kansas City, Missouri Police Department, Street Crimes Unit as witnesses.  The government called no witnesses to testify.

## II.  FINDINGS OF FACT

On the basis of the evidence presented at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. The Kansas City, Missouri Police Department's Property and Evidence Unit Procedural Manual section entitled "AUTHORIZATION AND DISPOSAL PROCEDURES" provides in relevant part:

    A. Obtaining Authorizations for Disposal

        1. Copies of property slips one year old or older, in the Live Files will be copied onto the back of Property Disposal Requests and those requests sent to the investigating element. …

* * *

        3. Once the Property Disposal Request is returned with an authorization to dispose of the property, the original property slips will be pulled from the Live File. The disposal will then be attached and the property either destroyed or placed in a disposal … status.

* * *

    E. Disposal of Narcotics

* * *

        4. Once a sufficient number of narcotics have been processed for disposal the Narcotics/Money Disposal Clerk will request a computer printout from the Data Entry Unit of all items in the narcotics disposal locations of DXRY.

        5. The Narcotics/Money Disposal Officer will take the completed printout to the General Counsel and request an "Application for Authority to Destroy Controlled Substances Pursuant to Section 195.040 Revised Statutes of Missouri 1986," be typed for the supervisor's signature. (After the application is signed a member of the General Counsel's office files it with the court.)

        6. Once the application is signed by the Presiding Judge an "Order" will be returned to the Unit supervisor. Once the order is received the Unit Supervisor will notify four auditors of the need for an audit.

        7. Upon completion of the audit the narcotics will be destroyed. …

(Defendant's Ex. I at 26-27 and 29-30)

2. Rick Curtin, an Evidence Technician within the Property and Evidence Unit of the

3

Kansas City, Missouri Police Department, testified that the Property Disposition Form (Defendant's Ex. K) is the form that is used to initiate the process of either holding or destroying evidence. (Tr. at 3-4) The Property Disposition Form is the same thing as the property disposal request referenced in the Kansas City, Missouri Police Department's Property and Evidence Unit Procedural Manual. (Tr. at 4) The Property and Evidence Unit sends out the form to the unit that originally placed the evidence in the Property and Evidence Unit and it is up to the detective or sergeant of that originating unit to sign off on whether to hold, release or destroy the property. (Tr. at 4-5) If the Property and Evidence Unit has prior knowledge of detectives contacting them, they will try to send the paperwork to that detective within the unit. (Tr. at 5) Mr. Curtin testified that his unit starts sending out the forms after holding the evidence for about a year because they have a limited space and more evidence coming in every day. (Tr. at 5) Hundreds of Property Disposition Forms are sent out every day. (Tr. at 44) The Property and Evidence Unit is responsible for 600,000 pieces of property. (Tr. at 44) The forms provide a purging process for the unit to possibly get rid of some of the older evidence that they are storing. (Tr. at 5)

3. The Control Number referenced on the Property Disposition Form (Defendant's Ex. K) is a tracking number that is stamped on a piece of evidence by the Property and Evidence Unit so that they can identify and locate the evidence. (Tr. at 6) The Property Disposition Form has two signature lines, one line for the officer who has knowledge of the case and a second line for the approval of a supervisor. (Tr. at 8) Mr. Curtin testified that they do not require a supervisor to sign the form. (Tr. at 8)

4. The first page of Defendant's Exhibit A, the Physical Evidence/Property Inventory Report,[1] is a form that is filled out when property is recovered. (Tr. at 9) The second page (the back side of the first page) is the chain of custody part of the form. (Tr. at 9-10) If evidence leaves the building, this form has to be filled out. (Tr. at 10) The last page of Defendant's Exhibit A is a Property Disposition Form that has been filled out. (Tr. at 10) The form states: "DISPOSE Of <u>ALL</u> evidence under CRN 07-086593[2] according to department regulations and/or policy as this case has reached its final disposition per _____." (Tr. at 11; Defendant's Ex. A at 3) The form has no signature for a Releasing Officer/Detective, but it has a stamped signature (Sgt. R. Reyes) under Supervisor/Commander Approval. (Tr. at 11-12; Defendant's Ex. A at 3) It has a

---

[1] Mr. Curtin testified that the Evidence Unit attaches a copy of the Physical Evidence/Property Inventory Report to the Property Disposition Form when it is sent to the Investigative Unit so that the Investigative Unit will have in front of them everything they need to make an informed decision before signing off on the form. (Tr. at 32)

[2] The government stipulated that Kansas City, Missouri Police Department Case No. 07-086593 is part of the evidence that the government will seek to introduce in the case against defendant Mulkey. (Tr. at 13)

4

stamped date of April 5, 2012. (Tr. at 12; Defendant's Ex. A at 3)

5. Defendant's Exhibit A shows that property consisting of a "clear plastic baggie containing (3) three additional clear plastic baggies each containing a beige rock-like substance located by P.O. Masters … in the dairy compartment of the refrigerator in the kitchen" was recovered on November 6, 2007. (Defendant's Ex. A at 1) The suspect is listed as Leonard A. Mulkey, the location of recovery is 1018 Chestnut pursuant to a search warrant and the CRN is 07-086593. (Defendant's Ex. A at 1) The second page shows that the property was released to the crime lab on November 14, 2007, and then returned from the crime lab on January 23, 2008. (Defendant's Ex. A at 2) The first page of Defendant's Exhibit A shows that the property was destroyed on November 29, 2012. (Tr. at 30)

6. Defendant's Exhibit B shows that property consisting of a "clear plastic baggie containing a white powder substance" located in the center console of a green 1994 Pontiac Firebird was recovered on November 6, 2007. (Defendant's Ex. B at 1) The suspect is listed as Leonard A. Mulkey, the location of recovery is 1018 Chestnut pursuant to a search warrant and the CRN is 07-086593. (Defendant's Ex. B at 1) The second page shows that the property was released to the crime lab on November 14, 2007, and then returned from the crime lab on January 23, 2008. (Defendant's Ex. B at 2) As with Defendant's Exhibit A, the last page of Defendant's Exhibit B is a Property Disposition Form that states: "DISPOSE Of <u>ALL</u> evidence under CRN 07-086593 according to department regulations and/or policy as this case has reached its final disposition per _____." (Tr. at 15; Defendant's Ex. B at 4) As with Defendant's Exhibit A, Defendant's Exhibit B has a stamped signature of Sgt. R. Reyes and a stamped date of April 5, 2012. (Tr. at 15; Defendant's Ex. B at 4) The first page of Defendant's Exhibit B shows that the property was destroyed on November 29, 2012. (Tr. at 30)

7. Defendant's Exhibit C shows that property consisting of a "white plastic bag containing two (2) clear plastic bags with a green leafy substance and (1) one clear plastic bag containing (7) seven clear plastic bags with a green leafy substance … approx. 84.1 grams test (+)" located atop the kitchen cabinets in the kitchen was recovered on November 6, 2007. (Defendant's Ex. C at 1) The suspect is listed as Leonard A. Mulkey, the location of recovery is 1018 Chestnut pursuant to a search warrant and the CRN is 07-086593. (Defendant's Ex. C at 1) The second page shows that the property was released to the crime lab on November 14, 2007, and then returned from the crime lab on January 23, 2008. (Defendant's Ex. C at 2) As with Defendant's Exhibits A and B, the last page of Defendant's Exhibit C is a Property Disposition Form that states: "DISPOSE Of <u>ALL</u> evidence under CRN 07-086593 according to department regulations and/or policy as this case has reached its final disposition per _____." (Tr. at 18; Defendant's Ex. C at 4) As with Defendant's Exhibits A and B, Defendant's Exhibit C has a stamped signature of Sgt. R. Reyes and a stamped date of April 5, 2012. (Tr. at 18; Defendant's Ex. C at 4) The first page of Defendant's Exhibit C shows that the

property was destroyed on November 29, 2012. (Tr. at 30)

8. Defendant's Exhibit D shows that property consisting of a "clear plastic baggie containing a white powder substance … approx. 6.3 grams test (+)" located in the dairy compartment of the refrigerator in the kitchen was recovered on November 6, 2007. (Defendant's Ex. D at 1) The suspect is listed as Leonard A. Mulkey, the location of recovery is 1018 Chestnut pursuant to a search warrant and the CRN is 07-086593. (Defendant's Ex. D at 1) The second page shows that the property was released to the crime lab on November 14, 2007, and then returned from the crime lab on January 23, 2008. (Defendant's Ex. D at 2) As with Defendant's Exhibits A, B and C, the last page of Defendant's Exhibit D is a Property Disposition Form that states: "DISPOSE Of <u>ALL</u> evidence under CRN 07-086593 according to department regulations and/or policy as this case has reached its final disposition per _____." (Tr. at 17; Defendant's Ex. D at 4) As with Defendant's Exhibits A, B and C, Defendant's Exhibit D has a stamped signature of Sgt. R. Reyes and a stamped date of April 5, 2012. (Defendant's Ex. D at 4) The first page of Defendant's Exhibit D shows that the property was destroyed on November 29, 2012. (Tr. at 30)

9. Defendant's Exhibit E shows that property consisting of a "beige rock substance weighing 3.5 g." was recovered on October 25, 2007. (Defendant's Ex. E at 1) The location of recovery is 1125 Locust and the CRN is 07-086593. (Defendant's Ex. E at 1) The second page shows that the property was released to the crime lab on October 30, 2007, and then returned from the crime lab on January 23, 2008. (Defendant's Ex. E at 2) As with Defendant's Exhibits A, B, C and D, the last page of Defendant's Exhibit E is a Property Disposition Form that states: "DISPOSE Of <u>ALL</u> evidence under CRN 07-086593 according to department regulations and/or policy as this case has reached its final disposition per _____." (Tr. at 21; Defendant's Ex. E at 4) As with Defendant's Exhibits A, B, C and D, Defendant's Exhibit E has a stamped signature of Sgt. R. Reyes and a stamped date of April 5, 2012. (Tr. at 21; Defendant's Ex. E at 4) The first page of Defendant's Exhibit E shows that the property was destroyed on November 29, 2012. (Tr. at 19 and 30)

10. Defendant's Exhibit F shows that property consisting of $1,000 in U.S. currency was located on Leonard A. Mulkey's person and was recovered on November 6, 2007. (Defendant's Ex. F at 1) The suspect is listed as Leonard A. Mulkey, the location of recovery is 1018 Chestnut and the CRN is 07-086593. (Defendant's Ex. F at 1) The fourth page of Defendant's Exhibit F is a Currency Disposition Form dated May 28, 2008, which is marked to hold the currency in the case. (Tr. at 22-23) The form was signed by Detective Christopher Onik. (Tr. at 59; Defendant's Ex. F at 4) As with Defendant's Exhibits A, B, C, D and E, the last page of Defendant's Exhibit F is a Property Disposition Form that states: "DISPOSE Of <u>ALL</u> evidence under CRN 07-086593 according to department regulations and/or policy as this case has reached its final disposition per

6

_____." (Defendant's Ex. F at 5) As with Defendant's Exhibits A, B, C, D and E, Defendant's Exhibit F has a stamped signature of Sgt. R. Reyes and a stamped date of April 5, 2012. (Tr. at 24; Defendant's Ex. F at 5) The second page of Defendant's Exhibit F shows that the currency was released to accounting on May 1, 2012. (Tr. at 25)

11. Defendant's Exhibit G shows that property consisting of $3,000 in U.S. currency was located in a pocket of a coat which was in a bedroom closet and was recovered on November 6, 2007. (Defendant's Ex. G at 1) The suspect is listed as Leonard A. Mulkey, the location of recovery is 1018 Chestnut pursuant to a search warrant and the CRN is 07-086593. (Defendant's Ex. G at 1) The fourth page of Defendant's Exhibit G is a Currency Disposition Form dated May 28, 2008, which is marked to hold the currency in the case. (Tr. at 26) The form was signed by Detective Christopher Onik. (Tr. at 59; Defendant's Ex. G at 4) As with Defendant's Exhibits A, B, C, D, E and F, the last page of Defendant's Exhibit G is a Property Disposition Form that states: "DISPOSE Of ALL evidence under CRN 07-086593 according to department regulations and/or policy as this case has reached its final disposition per _____." (Defendant's Ex. G at 5) As with Defendant's Exhibits A, B, C, D, E and F, Defendant's Exhibit G has a stamped signature of Sgt. R. Reyes and a stamped date of April 5, 2012. (Tr. at 27; Defendant's Ex. G at 5) The second page of Defendant's Exhibit G shows that the currency was released to accounting on May 1, 2012.

12. Defendant's Exhibit H shows that property consisting of "clear plastic baggie containing green substance thought to be marijuana weighing appr 100 grams; clear plastic baggie containing a white substance thought to be "crack" weighing appr 6.0 grams; clear plastic baggie containing a white substance thought to be "crack" weighing appr 20.0 grams" was recovered on December 11, 2007. (Defendant's Ex. H at 1) The suspect is listed as Leonard A. Mulkey, the location of recovery is Independence and Garfield and the CRN is 07-099924.[3] (Defendant's Ex. H at 1) The last page of Defendant's Exhibit H is a Property Disposition Form that states: "DISPOSE Of ALL evidence under the control number listed above, according to department directives. Inactivated 1-7-08." (Tr. at 31; Defendant's Ex. H at 4) The Property Disposition Form was signed by a detective on April 26, 2012, and by a sergeant on April 30, 2012. (Tr. at 32; Defendant's Ex. H at 4) The first page of Defendant's Exhibit H shows that the property was destroyed on November 29, 2012.

13. After the Property and Evidence Unit is notified by a returned Property Disposition Form that they can dispose of narcotics evidence, the property is pulled and placed in a drug disposal location. (Tr. at 36) These drugs will sit for an indefinite period of time. (Tr. at 36) A federal judge has to sign off on the disposal of

---

[3]The government stipulated that Kansas City, Missouri Police Department Case No. 07-099924 is defendant Mulkey's other investigation. (Tr. at 30-31)

7

narcotics. (Tr. at 36-37)

14. On December 23, 2008, Detective Onik contacted Assistant United States Attorney Gregg Coonrod, Chief of the Narcotics Unit, asking for federal prosecution of defendant Mulkey. (Tr. at 57-58 and 60) Mr. Curtin testified that if someone had caught the fact that Mulkey's cases were active, the drugs could have been pulled from the going-to-get-destroyed pile and put back in the hold-for-trial pile. (Tr. at 42)

15. Sergeant Renee Reyes testified that she is the operations sergeant for the Street Crimes Unit. (Tr. at 46) When property disposal forms come in, Sergeant Reyes and her clerical assistant separate the forms between the undercover squad, the gang unit, the vice squad, the drug squad and the gun squad, and then hand them out to the applicable squads. (Tr. at 46-47) Sergeant Reyes testified that she can usually tell from the attached Physical Evidence/Property Inventory Report to which unit it is assigned. (Tr. at 47) Sergeant Reyes handles a certain amount of the property disposal forms herself (160 of the last 458 she received with a thirty-day turnaround). (Tr. at 47)

16. The Property Disposition Forms that have Sergeant Reyes' stamped signature are forms that she decided to take care of herself. (Tr. at 49) First, Sergeant Reyes would have looked at the attached Physical Evidence/Property Inventory Reports and started checking case files and several databases trying to determine the final case status. (Tr. at 49) While Sergeant Reyes does not recall these particular cases relating to defendant Mulkey, she is sure that she would have checked CaseNet, REGIS, ALERT, NCIC, the SNU database and web imaging and the department Tiburon web imaging. (Tr. at 49) None of these databases reflect pending federal prosecutions. (Tr. at 54 and 58) Given that she stamped her signature to dispose of the evidence, Sergeant Reyes concludes that she checked the databases and they reflected either that there was no prosecution, that charges were declined or that the case was inactivated. (Tr. at 50-51) Because of the large quantity of Property Disposition Forms that Sergeant Reyes handles, she often does not note the basis for her decision on the forms. (Tr. at 52) In this instance, she made no notation on the forms. (Tr. at 52)

17. Sergeant Reyes testified that she knows now that Detective Christopher Onik was the case agent for the prosecution of defendant Mulkey, but she had no idea that Detective Onik was involved when she received the Property Disposition Forms. (Tr. at 54) If she had known, she would have given the forms to Detective Onik to determine the case status. (Tr. at 55) Detective Onik's name was not tied to the original reports and Detective Onik's name did not come up on any of the documentation Sergeant Reyes reviewed. (Tr. at 54-55) Sergeant Reyes testified that generally, when there is a federal prosecution in a drug case, the detective handling the case will make a notation in the case file that it is a federal case. (Tr. at 55) Sergeant Reyes did not locate anything that said this was a federal case.

(Tr. at 56)

18. Sergeant Reyes testified that she did not see the Currency Disposition Forms dated May 28, 2008 (Defendant's Ex. F at 4; Defendant's Ex. G at 4), which are marked to hold the currency in the case for court. (Tr. at 56-57) If she had seen these forms, Sergeant Reyes testified that she would have done more investigation and then probably would have found out about the federal case and held the property. (Tr. at 59)

III. DISCUSSION

Defendant Mulkey seeks to dismiss the indictment in this case as a sanction against the government for violating his constitutionally guaranteed due process rights. (Defendant's Motion to Dismiss (doc #21) at 1) In the alternative, defendant seeks to exclude from evidence all testimony and exhibits regarding the evidence in this case which has been destroyed. (Id.) Specifically, defendant argues that because he has no opportunity to seek re-testing or independent testing of the alleged drugs, he has been deprived of access to potentially exculpatory evidence. (Id. at 2) "Mr. Mulkey submits that the intentional failure to maintain the evidence in this case violates due process." (Id. at 3)

In United States v. Montgomery, 676 F.Supp.2d 1218 (D. Kan. 2009), the court summarized the law surrounding destruction of evidence:

> … Under the due process clause, criminal prosecutors must comport with prevailing notions of fundamental fairness. See California v. Trombetta, 467 U.S. 479, 485 … (1984). This standard of fairness requires that criminal defendants be afforded a meaningful opportunity to present a complete defense. See id. To safeguard that right, the Supreme Court has developed "what might loosely be called the area of constitutionally guaranteed access to evidence." Id. (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 867 … (1982)). …
>
> In California v. Trombetta, the United States Supreme Court found that the due process clause requires the government to preserve potentially exculpatory evidence on behalf of defendants. The Supreme Court stated that the constitutional duty to preserve evidence must be limited to evidence which might play a significant role in the suspect's defense. See id., 467 U.S. at 489 … To meet this standard of constitutional materiality, destroyed evidence must (1)

9

possess exculpatory value which was apparent before it was destroyed; and (2) be of such a nature that defendant could not obtain comparable evidence by other reasonably available means. Id.

In Arizona v. Youngblood, 488 U.S. 51 … (1988), the Supreme Court extended Trombetta and held that in cases where the exculpatory value of evidence was indeterminate and all that can be confirmed is that the evidence was "potentially useful" for the defense, defendant must show that the government acted in bad faith in destroying the evidence. In other words, the Supreme Court found that in cases involving the failure to preserve "potentially useful" evidence-i.e. evidentiary material of which no more can be said [than] that it could have been subjected to tests which might have exonerated defendant-due process is not violated unless defendant can show that law enforcement acted in bad faith in destroying the evidence. See id. at 57-58 ….

\* \* \*

… Defendant bears the burden to prove bad faith by the government. … Mere negligence in failing to preserve evidence is insufficient. …

Montgomery, 676 F.Supp.2d at 1240-42 (footnotes omitted).

Here, as in Trombetta, the destroyed evidence was much more likely to inculpate, rather than exculpate defendant Mulkey. See California v. Trombetta, 467 U.S. 479, 489 (1984)("Once the Intoxilyzer indicated that respondents were legally drunk, breath samples were much more likely to provide inculpatory than exculpatory evidence.") Not only had field testing of the destroyed evidence returned presumptive positive indications for the presence of cocaine, defendant Mulkey had made admissions that the seized evidence was cocaine and subsequent laboratory testing had confirmed that the seized substances were in fact cocaine.

While defense counsel argued at the hearing that the failure to have or to follow a reasonable policy amounts to bad faith[4] (Tr. at 61), this Court does not believe that the situation

---

[4] Defense counsel argues that the failure to fill in the "Date Sent" lines on the Property Disposition Forms, the failure to require that both signature lines be signed, the failure to obtain authorization from the officers who were involved in the recovery of the subject property and the failure to check on federal prosecutions constitute bad faith. (Tr. at 62-63)

10

before it falls into the category of "cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant," i.e. bad faith. Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Rather, the Court finds that the destruction of the evidence in this case can at worst be described as negligent. Where there is no suggestion of bad faith on the part of the police, but instead negligence, there is no violation of the Due Process Clause. Id. See also United States v. Scoggins, 992 F.2d 164, 167 (8th Cir. 1993); United States v. Johnson, 2012 WL 1382519, *4 (E.D. Mo. Apr. 11, 2012).

While it is unfortunate that evidence seized in this case was destroyed prior to defendant Mulkey having the opportunity to seek re-testing or independent testing of the alleged drugs, nothing indicates that additional testing would have proved exculpatory for defendant. Further, defendant Mulkey has not shown bad faith on the part of the police or the prosecutor in the destruction of the evidence. Thus, there is no basis for dismissing the indictment or excluding from evidence testimony and exhibits regarding the evidence which has been destroyed.

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying Defendant's Motion to Dismiss as well as defendant's alternative request for the exclusion from evidence of all testimony and exhibits regarding the evidence in this case which has been destroyed (doc #21).

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve timely objections shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of

plain error or manifest injustice.

                                                      */s/ Sarah W. Hays*
                                                      SARAH W. HAYS
                                        UNITED STATES MAGISTRATE JUDGE